FILED
SUPERIOR COURT
OF GUAM

2019 MAY 14 PM 2: 13

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DAVID MEREDITH,<br><br>                      Plaintiff,<br><br>vs.<br><br>YUCHEN JESSICA WANG,<br><br>                      Defendant. | Superior Court Case No. **DM0435-18**<br><br><br>**DECISION AND ORDER<br>RE<br>MOTION FOR<br>SPOUSAL SUPPORT AND<br>ATTORNEYS' FEES** |
| YUCHEN JESSICA WANG,<br><br>                    Counterclaimant-Plaintiff,<br><br>vs.<br><br>DAVID MEREDITH,<br><br>                    Counterclaim-Defendant. | |

This matter came before the Honorable Elyze M. Iriarte on Defendant/ Counterclaimant-Plaintiff Yuchen Jessica Wang's Motion for Spousal Support and Attorneys' Fees, heard on March 28, 2019. Based on the evidence presented, the parties' arguments, and the applicable law, the Court GRANTS IN PART and DENIES IN PART Wang's Motion.

## I. FINDINGS OF FACT

The Court finds the following by a preponderance of the evidence:

1. The parties married on May 23, 1993. Compl. ¶ 3(b) (July 23, 2018); Ans. ¶ 3 (Oct. 1, 2018).

ORIGINAL

2.  At the time of the hearing on the Motion for Spousal Support and Attorney's Fees, Plaintiff/Counterclaim-Defendant David Meredith resided on Guam.  He is 50 years old.

3.  Wang is a resident of Taichung, Taiwan, and is 54 years old. Wang Test. (Mar. 28, 2019).

4.  In May 2016, Meredith told Wang he wanted a divorce.  They had already been living in different countries since January or February of 2015. Compl. ¶ 3(c); Ans. ¶ 3.

5.  Meredith filed a Complaint for Divorce on July 23, 2018.

6.  The parties have neither a premarital or postmarital agreement.

7.  The parties have one adult child, Dylan Meredith, born in 1995.

8.  Meredith has another child born out of wedlock who is approximately ten years old. Meredith Test. (Mar. 28, 2019).

9.  Meredith spends an average of $3000 per month on his minor child. Meredith Test.

10. Meredith has practiced law since 1995 and holds licenses in at least five jurisdictions: New York, New Jersey, the British Virgin Islands, Hong Kong, and Wales and England. Meredith Test. In his most recent law firm profile, Meredith represented that he focuses on mergers and acquisitions, equity capital markets financings and exits, and debt capital markets transactions, in the fields of telecommunications, media and technology, real estate, hospitality, energy, health care and life sciences.  Pl.'s Ex. Z (Mar. 28, 2019).

11. The parties dispute Meredith's average annual income between 2008 and 2015. Wang claims the couple's tax filings indicate an average of $756,324.37. Mot. at 2 (Oct. 29, 2018). Meredith counters that during those years his employer offered a tax indemnity, reducing his actual income from $600,000 to $715,000 per year. Meredith Decl. ¶ 5 (Dec. 28, 2018).

ORIGINAL

12. From 2015 to around 2017, Meredith worked in Qatar. His income is unknown for 2016.

13. Meredith claims that he earned $145,000 in 2017. Meredith Decl. ¶ 13.

14. Around June 2018, Meredith obtained employment with a law firm in Shanghai. In 2018, he earned approximately $253,000 before taxes or $18,000 per month. Meredith Decl. ¶ 6; Opp'n to Mot. at 1 (Dec. 28, 2018). He estimates a 40-50% tax obligation.

15. On March 14, 2019, Meredith resigned from his job in Shanghai. At the time of the hearing on the Motion, he was unemployed. Meredith Test.

16. His income for the two months he worked in 2019 was approximately 1/6 of $300,000 to $315,000, before taxes, for a total of $50,000 to $52,500. Meredith Test.

17. Wang graduated in 1991 with a Master's Degree in Financial Management. Wang Reply Decl. (Jan. 2, 2019). She speaks fluent Chinese and English.

18. She worked at a bank until December 31, 2004, when the parties moved to China for Meredith's job opportunity. Mot. at 3; Wang Decl. ¶ 7 (Dec. 28, 2018).

19. Once the parties moved, they agreed that Wang would stay at home and take care of Dylan. Wang Test.; Meredith Test.

20. In 2013, Meredith sold community real property--a house located in New Jersey--for approximately $419,014.96. The parties equally split the proceeds of the sale. Meredith Test.; Wang Test.

21. In 2018, Meredith sold community real property--three condominiums in Florida--for approximately $415,000. Meredith kept 100% of the proceeds. Meredith Test.

22. Meredith claims he currently has approximately $400,000 to $600,000 in savings and checkings accounts across the globe. Meredith Test.

ORIGINAL

23. Meredith claims he has approximately $100,000 to $200,000 in various investment/brokerage accounts. Meredith Test.

24. Meredith claims he has approximately $445,000 in a Northwestern Mutual Account. Meredith Test.

25. The parties paid approximately $1,200,000 for two condominiums in Taiwan. Due to Taiwan law prohibiting non-citizens from holding title to an encumbered property, Meredith does not hold title to either condominium. Meredith Test.; Wang Test.

26. Wang and her mother have resided in one of the Taiwan condominiums since 2011.

27. She cares for and supports her 85-year-old mother.

28. Wang pays $3,500 per month out of her savings for the condominium. Thirteen years remain on the mortgage. Wang Test.

29. Her monthly expenses also include $800 for electricity, water, phone, and gas; $250 for the condominium's management; and $125 for taxes. Wang Test.

30. Wang's mother owns an apartment that she neither rents out or is attempting to sell. Wang Test.

31. Wang sold the other Taiwan condominium in July 2017. She used the proceeds of the sale to pay off the condominium's mortgage and kept 100% of the remaining proceeds, which amounted to approximately $51,000. Wang Test.

32. Wang's total monthly expenses average to $4,675, not including health and medical care, insurance, transportation, and continuing legal fees. Wang Reply Decl. ¶ 8.

33. Wang has paid over $5,000 in legal fees and expects her legal fees to continue at $2,500 per month. Wang Reply Decl. ¶ 9.


ORIGINAL

34. Wang has no income, and she has not received any money from Meredith since the beginning of 2016. Instead, she uses her savings to pay for expenses.

35. Her savings are in two bank accounts. One account held the proceeds from the sale of the parties' New Jersey home, which amounted to approximately $219,000. Wang claims the bank account now only has $139 due to college expenses for the parties' son, mortgage payments on the Taiwan condominiums, and various moving expenses. Wang Test.

36. Wang's second bank account in China had a starting balance of $200,000. The balance today is approximately $71,428 because of similar expenses. Wang claims the account will be empty by the end of 2019 due to her current expenses. Wang Test.

37. Wang has incurred medical expenses in the past year. In October 2018, she suffered a concussion which cost $200 in medical expenses. Wang also had surgery in February 2019 for the removal of a tumor on her thyroid, which cost approximately $3,000. Wang claims her recovery will take three to six months. Wang Test.

## II.   CONCLUSIONS OF LAW & ORDER

1. "When an action for dissolution of marriage is pending, the court may, in its discretion, require the husband or wife, as the case may be, to pay as alimony any money necessary to enable the wife, or husband, to support herself and her children...or to prosecute or defend the action." 19 GCA § 8402 (2005). The purpose of temporary spousal support is to enable the spouse to live in her accustomed manner during the pendency of the case, without requiring the spouse to impair her capital and ability to litigate the divorce. *Malabanan v. Malabanan*, 2013 Guam 30 ¶ 28.


ORIGINAL

2. "[W]hat is 'necessary' rests in the sound discretion of the trial court...to be exercised in view of the circumstances of the parties, their several necessities, and the pecuniary ability of the husband." *Cruz v. Cruz*, 2005 Guam 3 ¶ 10 (citations omitted). The court may consider factors such as "the parties' standard of living, the length of marriage, and the age, education, and ability of both parties." *Kang v. Kang*, 2014 Guam 25 ¶ 20.

3. Based on the parties' lengthy marriage, Meredith's greater financial resources and earning capacity, their previous high standard of living, Wang's long period of unemployment, her history of being fully and solely supported by Meredith, and her minimal resources, the Court concludes that Wang has few means for self-support and needs temporary spousal support.

4. Meredith argues that Wang has the ability and skills to be gainfully employed despite her age and long period of unemployment. Though this may be true, the Court finds that Wang's recent surgery and accompanying recovery period prevent her from seeking and obtaining a job at this time. The Court also finds that Wang failed to seek employment in prior years because she believed Meredith would continue to provide for her, as he has done for the vast majority of their marriage, and because she is her mother's sole caretaker. Should Wang's ability to gain employment in the future change, the Court will re-address the issue.

5. Because Wang's total monthly expenses average to $4,675, which do not reflect medical care or transportation costs, the Court awards Wang $5,000 per month in temporary spousal support, effective as of the date of the Complaint.


ORIGINAL

6. The Court may also require payment of attorney's fees in alimony actions. Because the costs of this litigation exceed her available resources and have quickly been depleting her savings, the Court awards Wang an additional $2,500 per month for attorney's fees. This Order for attorney's fees is retroactive to November 2018, as Wang represented in January 2019 that she had already incurred $5,000 in fees and expects to incur $2,500 in fees on a monthly basis thereafter.

7. The Court further concludes that Meredith has the pecuniary ability to meet this monthly obligation of temporary support, despite being currently unemployed. Meredith's savings are extensive, and the Court is not convinced that he has difficulty finding employment after 24 years of experience in international transactions law. Moreover, he has already made at least $50,000 this year alone, while Wang has made $0.

8. For the aforementioned reasons, the Court hereby GRANTS IN PART the Motion and ORDERS payment of $7,500 per month in temporary spousal support to Wang.

9. Wang also requests that the Court issue a preliminary injunction prohibiting Meredith from disposing of any community property without the Court's prior written order and approval. Reply at 8 (Jan. 2, 2019). A preliminary injunction is an extraordinary remedy that requires a party to show irreparable injury and a likelihood of succeeding on the merits. *HongKong & Shanghai Banking Corp. v. Kallingal,* 2005 Guam 13 ¶ 18. The Court understands that the basis of Wang's request is Meredith's history of selling community property and keeping the proceeds. However, Wang has failed to detail what community property is in peril. Determining whether losing property is an irreparable injury is typically a fact-specific inquiry, and the Court cannot make a fact-specific


ORIGINAL

determination without more information. *Id.* ¶ 24. Accordingly, Wang's request for a restraining order is DENIED.

The Court reminds the parties of the July 15, 2019 trial date and the pretrial conference on July 3, 2019 at 9:00 a.m.

SO ORDERED this 14th day of May 2019.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX

I acknowledge that a copy of the original hereto was placed in the court box of:

V. Williams
P. Berman

Date: 5/14/19    Time: 3pm

Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Vanessa Williams, Esq., for David Meredith
Daniel J. Berman, Esq., Berman, O'Connor & Mann, for Yuchen Jessica Wang

